JESSICA RUTZICK
Bar No. 6-3126
JESSICA RUTZICK & ASSOCIATES, P.C.
60 E. Simpson
Post Office Box 4114
Jackson, WY 83001
(307) 733-8140
(307) 733-8139 (facsimile)
jrutzick@rutzicklaw.com

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| MICHELLE HASBROUCK, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | Civil No. 13 CV 174-J |
| ) | |
| STARR INDEMNITY & LIABILITY ) | |
| COMPANY, a New York company, ) | |
| STARR COMPANIES, a New York ) | |
| corporation, MED-SENSE ) | |
| GUARANTEED ASSOCIATION, ) | |
| an Illinois corporation, and HEALTH ) | |
| INSURANCE INNOVATIONS, INC. ) | |
| a Florida corporation, ) | |
| ) | |
| Defendants. ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANT HEALTH INSURANCE INNOVATION'S MOTION FOR SUMMARY JUDGMENT

### I. INTRODUCTION

This case arises from the sale of a short term medical insurance plan underwritten by Starr Indemnity and Liability Company ("Starr") and sold by Defendant Health Insurance Innovations, Inc. ("HII") through a sub-agent of HII. HII developed the Starr Indemnity short

term medical insurance plan, underwrites it, markets it and administers the plan. The insurance plan is available for purchase only through membership with Defendant Med-Sense Guaranteed Association, ("MSGA"). MSGA is a sham association organized for the sole purpose of selling insurance. MSGA claims to offer benefits to its members in addition to the short term medical insurance. However, those benefits are no better than what is already available to the general public. HII pays itself a substantial portion of the enrollment fee and the monthly payments it collects without disclosure to it customers, who are led to believe the monthly payments are insurance premium payments and not "administrative fees" paid to HII.

Plaintiff Michelle Hasbrouck purchased four six-month insurance plans underwritten by Starr and offered by HII. In July 2012 Mrs. Hasbrouck became gravely ill and was hospitalized for approximately six days. She was diagnosed with serotonin syndrome- a life threatening illness. Her claims for medical expenses were submitted but denied pending a preexisting condition investigation. Starr Indemnity paid her claims only after this lawsuit was filed. It was only after this suit was filed that Mrs. Hasbrouck learned that a substantial portion of what she thought she was paying for insurance premiums were actually payments made to HII for "administrative fees." Those payments were made to HII without disclosure to Plaintiff, or her consent.

Plaintiff's claims in this suit include insurance bad faith, fraud and statutory attorney's fees. Genuine issues of material fact preclude summary judgment in favor of HII.

## II.  MATERIAL FACTS

This case arises from Plaintiff Michelle Hasbrouck's purchase of an insurance policy underwritten by Starr. Starr retained HII for purposes of production, servicing and acting as the

Hasbrouck v. Starr, et al.
*Plaintiff's Response to Defendant HII's Motion for Summary Judgment*
Page 2

agent to sell a group short term medical insurance policy ("STMI"). [Exh. 1]. The insurance policy was offered as part of membership with MSGA and MSGA was the group policyholder for the STMI policy. [Exh. 2].

Insurance plans are sold by HII's sub-agent over the telephone. In this case, Coverage One, owned by David Ettinger, was the subagent selling Mrs. Hasbrouck the policy. [Exhibit 3]. Mr. Ettinger explained the sales process. First a lead is generated by an on-line inquiry and purchased by Coverage One. [Ettinger Deposition, p. 18]. The agent calls the phone number in the lead and asks the potential customer a series of questions for purposes of underwriting the plan. [Id]. The agent fills out a questionnaire on-line and submits an electronic signature of the applicant to complete the application. [Ettinger Deposition, p. 41]. The call is then passed to a verification department that tape records that portion of the phone call. The verification process is recorded through a proprietary system of HII's. [Ettinger Deposition, p. 42].

Upon verification of the purchase, HII charges the customer's credit card with an initial enrollment fee and subsequent monthly payments. The insurance policy is made available to the insured on-line by HII. [Ettinger Deposition, p. 48]. Insurance cards are sent to the customer by mail. [Hasbrouck Deposition, p. 169]. Nowhere in the materials provided to Mrs. Hasbrouck prior to the sale is a disclosure that a substantial portion of her monthly payments will go towards membership dues with MSGA and towards HII's administrative costs. As it turns out, Mrs. Hasbrouck paid between $15.95 and $19.95 per person for membership dues to MSGA. She and three other family members were enrolled in the STMI insurance policy offered by HII. Out of the membership dues, 82% went towards marketing, administering MSGA's collections, bill collecting, web hosting, and general administrative services conducted by HII. [May

Hasbrouck v. Starr, et al.
*Plaintiff's Response to Defendant HII's Motion for Summary Judgment*
Page 3

Deposition, p. 162-163]. Additional administrative fees are paid out of those MSGA membership dues to National Association Company. The money that goes to membership benefits is $1.27 per month. [May Deposition, p. 164]. The MSGA membership does not provide benefits above or beyond what is available to the general public. [Lancaster Affidavit]. None of this is disclosed to MSGA's members before or after they purchase insurance through HII.

In this case, Plaintiff Michelle Hasbrouck believed she had purchased health insurance underwritten by Starr Indemnity. She did not know or appreciate that she was also paying membership dues for herself and her family members to MSGA. Plaintiff was most certainly not aware that a portion of her monthly payments were not, in fact, premium payments for insurance, but MSGA membership dues. Moreover, Plaintiff did not know that only 5% of the membership dues were allegedly for purposes of member "benefits" and the balance went towards administration fees to HII, MSGA and National Association Company. [Hasbrouck Deposition, p. 180, 188, 218, 220-223].

On June 2, 2012, Plaintiff Michelle Hasbrouck purchased Starr's six month STMI. [Exh. 4, 5]. Her certificate of coverage included a $1,000.00 deductible, Coinsurance of 80%-20% up to $5,000.00 and 100% thereafter. [Id.].

On July 18, 2012 Mrs. Hasbrouck suffered from stroke-like symptoms and was rushed to the emergency room at the Wyoming Medical Center in Casper, Wyoming. She was subsequently admitted to the Wyoming Medical Center and hospitalized for five days. Mrs. Hasbrouck was diagnosed with "extrapyramidal disease." Starr's claims administrator testified this diagnosis is either an extreme stiffness and inability to move or inability to control

Hasbrouck v. Starr, et al.
*Plaintiff's Response to Defendant HII's Motion for Summary Judgment*
Page 4

movement. [Beckley Deposition, p. 66-67]. Mrs. Hasbrouck's doctors determined this condition was caused by an allergic reaction to serotonin, or "serotonin syndrome." [Exh. 6]. The medical bills incurred for the hospitalization and follow-up treatment exceed $20,000.00. [Thomas Deposition p. 152-155].

Mrs. Hasbrouck tried repeatedly to submit her claim and contact the appropriate people to follow up on the claim denial and preexisting condition investigation. She had difficulty even accessing her insurance policy. Mrs. Hasbrouck testified:

> Q. And you were provided with a link to an electronic application –
>
> A. Yeah.
>
> Q. -- to read and electronically sign?
>
> A. They asked me if they could sign -- if -- how you spell your name, yeah. I mean, basically, the only time that I logged onto the website was basically towards the end of our thing. And I remember calling a couple of times because they never sent -- they never sent us a packet of our policy. I had to go online and look at our policy.
>
> Q. They sent you a link to access the policy?
>
> A. They did, but I had to call them because I could not log onto it. So I had to call them several times to get a new user name and password to log onto it. And that's -- when I had to get the paperwork to send in the papers for Cathy Berens, I also had to call them to figure out how to get the form -- how to log on to get the form to fill it out to send that in to get reimbursed for it. [Hasbrouck Deposition, p. 159-160].

Mrs. Hasbrouck's claim for medical benefits was denied pending a preexisting condition investigation. Ultimately, Plaintiff's medical benefits were not paid until after she filed this

Hasbrouck v. Starr, et al.
*Plaintiff's Response to Defendant HII's Motion for Summary Judgment*
Page 5

lawsuit, fourteen months after her claim was submitted. Even now, thousands of dollars in Plaintiff's claim were denied based on an "RBRVS" payment limitation, although the policy language calls for claims to be paid under the "usual and customary" standard.[1]

The bottom line is that HII, Starr Indemnity and MSGA agreed to, and engaged in, a scheme, pattern and undertaking to sell a substandard insurance product, to collect undisclosed administrative fees and association membership dues, and to delay, deny and/or underpay claims. HII's corporate representative described HII as the "hub" of the Starr STMI policy and the sham association acting as the master policy holder, MSGA. [Garavuso Deposition, pp. 18-19]. He testified:

> We have relationships with best in class carriers, and we have relationships with a large distribution network. And we have a technology tool that is pretty much the hub of bringing those two things together.
> We develop products with the carrier. The carrier does all the underwriting, assumes all the risk.
> We market those products to the agents to sell, to solicit business. And they can use our quoting tool, our technology hub, basically, to bind a coverage.

HII was organized for the sole purpose of selling a substandard insurance product. As the group policyholder, MSGA was the vehicle by which Defendants accomplished their scheme. This is evidenced by the fact that Michael Hershberger, was serving as the president of MSGA when MSGA entered into the exclusive Marketing Agreement with HII. Mr. Hershberger was

---

[1] RBRVS is a fee schedule and does not represent usual and customary charges. Plaintiff's insurance policy makes no reference to RBRVS. [Flood Report, Doc 60-1 p. 8 of 25].

Hasbrouck v. Starr, et al.
*Plaintiff's Response to Defendant HII's Motion for Summary Judgment*
Page 6

also serving as HII's Chief Financial Officer when he executed the Marketing Agreement.[2] [Exh. 7, p. 9]. This agreement is dated March 1, 2011 and signed by Mike Hershberger, President of MSGA. [Id.]. This interdependent relationship substantiates that MSGA is not only a bogus association, but it was formed for the sole purpose of selling insurance through HII and for purposes of collecting undisclosed fees for HII revenue stream.

## III. ARGUMENT

### A. Standard of Review

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R. Civ. P. 56(a); *Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1207,-08 (10th Cir. 2010). As a general matter, the summary judgment movant has the burden to produce evidence supporting its claims. *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010). If the movant does so, the burden of production shifts to the party opposing summary judgment to demonstrate that a genuine issue of material fact exists. *Id.* At all times, the Court must view the evidence in the light most favorable to the party opposing summary judgment. *Id.* At 1168. There is a genuine issue of material fact if a reasonable jury could find in favor of the non-moving party. *Id.* At 1169. In addition, the Court may only consider evidence that is admissible at trial – inadmissible evidence should be disregarded. *Johnson*, 594 F.3d at 1209.

### B. The jury must decide Mrs. Hasbrouck's claim for fraud against Defendants.

In Wyoming, the elements in a cause of action of fraud are (1) a false representation intended to induce action by the plaintiff; (2) the plaintiff reasonably believed the representation

---

[2] Mr. Hershberger was the president of MSGA for the years of 2010 and 2011. [Exh. 8, 9]. He was also employed as HII's CFO beginning in October 2011. [May Deposition, p. 42].

Hasbrouck v. Starr, et al.
*Plaintiff's Response to Defendant HII's Motion for Summary Judgment*
Page 7

to be true; and (3) the plaintiff relied on the false representation and suffered damages. *Excel Constr. Inc. v. HKM Engineering, Inc.*, 228 P.3d 40, 48 (Wyo. 2010). Fraud must be proven by clear and convincing evidence. *Excel Constr.*, 228 P.3d at 48.

Conduct or words which tend to produce an erroneous impression may satisfy the plaintiff's burden. *Britton v. Bill Anselmi Pontiac-Buick-GMC, Inc.*, 786 P.2d 855 (Wyo. 1990). **In addition, even if someone is not under a duty to speak, if he does speak, he is under a duty to speak truthfully and to make a full and fair disclosure.** *Id.; Meeker v. Lanham*, 604 P.2d 556 (Wyo. 1979); *Jurkovich v. Tomlinson*, 905 P.2d 409, 411 (Wyo. 1995); *Lavoie v. Safecare Health Service, Inc.*, 840 P.2d 239, 252 (Wyo. 1992).

A determination as to whether something is misleading is not made in a vacuum. Rather, the standard is whether it has a tendency to mislead a reasonable consumer, and the context of the statements and omissions is relevant, as well as location, size, and working of any purported disclosure. Moreover, even if a statement is technically true, it can still be misleading. *See, McKell v. Washington Mutual, Inc.*, 142 Cal.App.4th 1457, 1471, 49 Cal.Rptr.3d 227 (2006).

In *Wohlers & Co. v. Bargis*, 969 P.2d 949 (Nev. 1998), the Nevada Supreme Court upheld a jury's finding of fraud against a health insurance company and its underwriter. In *Bartgis*, the insurer amended its policy to exclude coverage for "ancillary charges" associated with a hospital stay. The Nevada Supreme Court affirmed the finding of fraud because the insurer concealed the ancillary charges limitation provision and it misrepresented that the policy was comparable to a comprehensive health plan, when in fact, it was not comprehensive. The Supreme Court held that the jury could have concluded that the defendant deliberately misrepresented the policy and had concealed the ancillary charges limitation in order to induce

Hasbrouck v. Starr, et al.
*Plaintiff's Response to Defendant HII's Motion for Summary Judgment*
Page 8

plaintiff's enrollment in the policy. 969 P.2d at 1261. All reasonable inferences in the plaintiff's favor supported the finding of fraud. *Id.*

There are numerous documents disseminated by HII which produced an erroneous impression by Mrs. Hasbrouck. Plaintiff reasonably believed she was paying insurance premiums for the Starr STMI plan and was never advised that a substantial portion of her payments went towards administration and membership dues incurred by MSGA and HII. Plaintiff could not access the MSGA brochures or alleged benefits without going through HII's website and was only aware of the STMI policy as a product she had purchased in the transaction.

The first time Plaintiff even understood she had so-called benefits through MSGA was during her deposition. To this day, Mrs. Hasbrouck remains confused about the role each defendant played in this fraudulent scheme. She testified:

> A. But from what I'm looking at on here, I never even knew -- I mean, the LensCrafters Vision Club, I would have used. The emergency roadside assistance, car rental discount –
>
> Q. (BY MR. ADDLEMAN) These are all benefits that you might have used?
>
> A. Well, yeah. UPS delivery, Office Depot supplies and furniture. I would have used actually quite a few of them. I didn't even know that there was a 24-hour nurse help line.
>
> Q. Do you understand what the term "fraud" means?
> A. Basically lying, stealing, faking. You're pretending -- you're lying that something is not what it really is.
>
> Q. Anything else?

Hasbrouck v. Starr, et al.
*Plaintiff's Response to Defendant HII's Motion for Summary Judgment*
Page 9

A. False --

Q. False statements?

A. Yeah.

Q. And that's how you would define fraud?

A. Yeah.

Q. Did anyone make any false statements to you with respect to purchasing insurance?

MS. RUTZICK: And again, I'll object insofar as it calls for any kind of legal conclusion. Go ahead and answer.

A. Yes, I agree that they have.

Q. (BY MR. ADDLEMAN) And who is "they"?

A. The insurance -- all of them. [Hasbrouck Deposition, p. 222-23].

\*\*\*\*

Q. Had you even heard of MSGA before today?

A. No. And that was -- that was the other thing. Anywhere in here -- it says in here that I'm paying fifteen-something a month per person that's coming out of -- oh, yeah, 15.95. And that's on this one. And then it constantly went up through each one that I went through. Where in here does it say that I'm giving permission or where in here is it showing that I am signing up for this? Where am I giving permission for them to, and where am I get any benefit from this? [Hasbrouck Deposition, p. 233].

\*\*\*\*

A. And I'm not sure if it's in any of the other ones or not, about -- and that they're deducting this. How do I know that -- I mean, what benefits am I getting out of this, and how do I know that I'm getting benefits out of this and that it's being taken out of -- I mean, you got to figure four people at 20 bucks per person,

Hasbrouck v. Starr, et al.
*Plaintiff's Response to Defendant HH's Motion for Summary Judgment*
Page 10

that's $100 a month. Where is that money going? [Hasbrouck Deposition, p. 235].

\*\*\*

A. I'm being charged 431.93, a one-time enrollment
fee of 125. That brings my total to 556 and 431 each
month after that. That does not include my dental
insurance. Where in -- I mean, if you have other copies
of these that tells me in here that I am also subscribing
to this other thing and I'm paying for this or money is
coming out of this or where all of -- where my money's
going to -- I mean, which company am I paying for? [Hasbrouck Deposition, p. 236].

Second, there are sufficient facts from which a reasonable jury could conclude that Plaintiff reasonably believed she had purchased health insurance and the payments were for insurance premiums only. In other words, Plaintiff did not know the funds charged to her credit card were paid to MSGA and HII. The facts reflect that HII and MSGA misappropriated funds from Plaintiff's account without her knowledge or consent to pay themselves administrative fees and membership dues that provided no appreciable benefit to Mrs. Hasbrouck.

Fraud is an intentional tort. In order to prove intentional misrepresentation, the plaintiff must show that the misrepresentation was made intentionally, with knowledge of its falsity. *Excel Const., Inc. v. HKM Eng'g, Inc.*, 2010 WY 34, 228 P.3d 40, 49 (Wyo. 2010). The question of intent is ordinarily for the jury to decide. *Carlson v. Carlson*, 775 P.2d 478, 483 (Wyo. 1989); *Bruch v. Benedict*, 165 P.2d 561, 574 (Wyo. 1946). Moreover, the "[c]redibility of the witnesses and the weight to be given their testimony is for the jury to determine." *Big-O Tires v. Santini*, 838 P.2d 1169, 1177 (Wyo. 1992).

Finally, when the evidence is viewed in the light most favorable to the Plaintiff, and all reasonable inferences are drawn in Plaintiff's favor, there is a genuine dispute as to material facts regarding whether Plaintiff reasonably believed she was paying for only health insurance

Hasbrouck v. Starr, et al.
*Plaintiff's Response to Defendant HII's Motion for Summary Judgment*
Page 11

premiums and *not* for administrative expenses and membership dues to a bogus association which was, in turn, paying most of those funds back to HII. Defendant has presented no evidence reflecting Mrs. Hasbrouck was ever advised of this shady arrangement among the defendants or that HII and MSGA were taking a portion of her premium payments.

Defendant's primary argument seems to be that Plaintiff was not induced into any action by MSGA or that MSGA caused her harm. However, the evidence reflects that Plaintiff was induced into buying the Starr STMI group plan without ever being advised that along with her premium payments, HII would withdraw substantial funds each month to pay itself administrative fees and MSGA association membership dues. When asked if she had ever seen an email application for the Med Plus STM policy, (Exh. 10), Mrs. Hasbrouck said "no." [Hasbrouck Deposition, p. 175-180]. She explained that the application and purchase of the Starr STMI plan was strictly over the telephone and she never signed an application electronically. [Id.].[3]

Mrs. Hasbrouck's recollection is confirmed by the agent who brokered the purchase, David Ettinger. Mr. Ettinger testified that customers do not complete electronic applications or affix an electronic signature. Rather, the purchase is electronically transferred to a verification department where a recording is made between the customer and the verifier confirming a pre-approved script. [Ettinger Deposition, p. 41, 47, 94].

Thus, in purchasing the Starr STMI plan, Mrs. Hasbrouck was fraudulently induced into paying, without her knowledge, for membership dues to a bogus association which were actually

---

[3] In fact, this document was produced by Mrs. Hasbrouck's attorney in discovery. Courtnee Cohen, the paralegal working on this case, accessed Mrs. Hasbrouck's documents using her HiiQuote.com login information. Ms. Cohen then printed all the documents available. Mrs. Hasbrouck had never accessed the application, nor has she printed it herself [Affidavit of Courtnee Cohen].

Hasbrouck v. Starr, et al.
*Plaintiff's Response to Defendant HII's Motion for Summary Judgment*
Page 12

retained by HII to pay for "administrative expenses." For these reasons, the issue of Plaintiff's claim for fraud against HII must go to the jury.

## IV. CONCLUSION

HII is the "hub" of a nefarious insurance scheme in which it intentionally misleads its "members" to induce them into purchasing the Starr STMI insurance policy and membership in a sham association. HII profits from the scheme because HII collects substantial funds from its customers' monthly payments for its own "administrative fees" and it fails to disclose this pertinent information to its customers. Plaintiff should be able to seek economic and non-economic compensatory damages, punitive damages as well as attorney's fees and costs in her claim of fraud against HII. Genuine issues of material fact require Plaintiff's claim for fraud against HII to be decided by a jury. Accordingly, Plaintiff requests that the Court deny HII's *Motion for Summary Judgment*.

DATED this 10th day of June, 2014.

By:     */s/ Jessica Rutzick*
Jessica Rutzick
Bar No. 6-3126
JESSICA RUTZICK & ASSOCIATES, P.C.
60 E. Simpson
Post Office Box 4114
Jackson, WY 83001
(307) 733-8140
jrutzick@rutzicklaw.com

Hasbrouck v. Starr, et al.
*Plaintiff's Response to Defendant HII's Motion for Summary Judgment*
Page 13

## CERTIFICATE OF SERVICE

I, Jessica Rutzick, do hereby certify that on June 10th, 2014, I served the within and foregoing via CM/ECF to said attorneys as follows:

Billie Addleman
Khale Lenhart
Hirst & Applegate, P.C.
1720 Carey Ave. Suite 200
P.O. Box 1083
Cheyenne, WY 82003

                                                          */s/ Jessica Rutzick*
                                                            Jessica Rutzick

Hasbrouck v. Starr, et al.
*Plaintiff's Response to Defendant HII's Motion for Summary Judgment*
Page 14